UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AUDREY Y. SELLERS,
    **Plaintiff,**

  v.                    Case No. 08C0224

ZURICH AMERICAN INSURANCE CO.,
    **Defendant.**

## DECISION AND ORDER

Plaintiff Audrey Sellers brings this action against defendant Zurich American Insurance Co. ("Zurich"), alleging that Zurich violated the Employee Retirement Income Security Act of 1974 ("ERISA") when it denied her benefits under an Accidental Death and Dismemberment ("AD&D") policy following the death of her husband, Anthony Sellers ("Anthony"). Before me now are the parties' cross motions for summary judgment.

### I. BACKGROUND

**A. Events Culminating in Anthony's Death**

Anthony was a cable inspector/investigator for Time Warner Cable ("Time Warner") when, on September 15, 2005, he tore the patellar tendon in his left knee while performing training exercises at work. On September 29, 2005, Anthony underwent surgery to repair the tendon. The surgery included inserting a metal wire into his knee to protect and reinforce the repair. For a time, Anthony was recovering as expected. The wire remained in his knee, and although it was no longer necessary, his doctor advised against removing it unless it became problematic. On May 15, 2006, Anthony reported swelling in the knee,

1

and an x-ray revealed that the wire had broken into fragments in three places. On June 19, 2006, Anthony reported stabbing pain, which the physician concluded was caused by the broken wire.

On November 16, 2006, Anthony underwent surgery to remove the wire. Ultimately, the surgeon removed five wire fragments from the knee. The surgery appeared to have been a success, but on November 20, doctors discovered and removed a hematoma from one of the incisions. Anthony appeared to be recovering, but on November 25, 2006, he suffered an acute pulmonary embolism with infarct and died. A physician hired by Time Warner to conduct a postmortem record review concluded that "the pulmonary embolism was a direct consequence of the surgery of November 16, 2006." (ZUR 300.)[1]

**B.     Relevant Policy Provisions**

Time Warner's employee benefit plan in which Anthony participated includes Zurich's AD&D policy, which provides a $101,000 benefit payable to the beneficiary of a deceased employee if the employee's "injury . . . result[ed] in Loss of Life" and such loss of life occurred "within 365 days of the accident." (ZUR 213.) The policy defines injury as "an accidental bodily injury which is a direct result, independent of all other causes, of a hazard set forth in the 'Description of Hazards,'" (ZUR 213), including an "[i]njury sustained by a Covered Person anywhere in the world" (ZUR 218). The policy excludes coverage of "any claim that is caused by, contributed to, or results from: . . . illness or disease" (ZUR 214) or "sickness, disease, bodily infirmity or medical or surgical treatment thereof, or

---

[1]The administrative record is attached to the Affidavit of Counsel Attaching Administrative Record in Support of Plaintiff's Motion for Summary Judgment, Docket # 14. When citing the administrative record, I will cite only the relevant pages using the numbering system used by the parties, ZUR ___.

bacterial or viral infection, regardless of how contracted" (ZUR 235). Under the policy, Zurich has "discretionary authority to determine eligibility for benefits and to construe the terms of the plan." (ZUR 121.)

**C.     Plaintiff's Claim**

On March 23, 2007, plaintiff filed a claim for the $101,000 death benefit. On July 10, 2007, Zurich denied the claim, stating that Anthony's death was not a direct result of the September 15, 2005 accident and that because Anthony's death resulted from surgery, coverage was excluded based on Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050 (7th Cir. 1991). Plaintiff appealed, and Zurich's appeal committee affirmed the denial of benefits. Plaintiff asked the committee to review the matter again, and the committee again affirmed.

## II.  STANDARDS OF REVIEW

**A.     Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The fact that both parties move for summary judgment does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. See 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 at 327-28 (3d ed. 1998). I may grant summary judgment only if one of the moving parties is entitled to judgment as a matter of

3

law on the basis of the material facts not in dispute. See Mitchell v. McCarty, 239 F.2d 721, 723 (7th Cir. 1957).

**B.     ERISA Standard**

In an ERISA case, I review a plan administrator's denial of benefits de novo unless the plan gives the administrator discretion to determine eligibility, in which case I review the decision under the arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In the present case, the plan gives Zurich discretion, but plaintiff makes two arguments as to why I should nevertheless review the denial de novo. First, she contends that Time Warner was involved in the denial. If a decision to deny benefits is made by an unauthorized entity, the de novo standard applies. Samaritan Health Ctr. v. Simplicity Health Care Plan, 516 F. Supp. 2d 939, 950 (E.D. Wis. 2007). However, plaintiff fails to establish that Time Warner rather than Zurich was responsible for denying her claim. The evidence shows only that after initially deciding to deny plaintiff's claim, Zurich consulted with Time Warner pursuant to an agreement that allowed Time Warner "an opportunity to notify the applicable division . . . and to request edits to the denial letters." (ZUR 337.) Time Warner suggested some edits to Zurich's proposed denial letter, most of which were stylistic but did not control the decision to deny benefits. The present case differs from Samaritan because there, the entity that had discretion under the plan was not the entity that denied benefits. Plaintiff also argues that I should review the decision de novo because Zurich failed to adequately explain it. However, the adequacy of the explanation for the denial of a claim does not impact the standard of review but rather whether the denial should be upheld. See, e.g., Clarke ex rel. Estate of Pickard v. Ford Motor Co., 343 F. Supp. 2d 714, 718-19 (E.D. Wis. 2004). Therefore, I will

4

review Zurich's decision under the arbitrary and capricious standard.

### III. DISCUSSION

Under such standard, I ask whether the denial "is based on a reasonable explanation of relevant plan documents." Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001) (internal quotations omitted); see also Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1052 (7th Cir. 1987) (stating that under the arbitrary and capricious standard, a decision may not be reversed merely because it is wrong, but only if it is unreasonable). The decision will stand if Zurich made an informed judgment and articulated a satisfactory explanation for such judgment, i.e., an explanation making a "rational connection" between the "text under consideration" and the "conclusion reached." Cuddington v. N. Ind. Public Serv. Co., 33 F.3d 813, 817 (7th Cir. 1994) (internal quotations omitted). However, "'deferential review is not no review,'" and "'deference need not be abject.'" Hess, 274 F.3d at 461 (quoting Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996)). "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." Id.; see Filipowicz v. Am. Stores Benefit Plans Comm., 56 F.3d 807, 814 (7th Cir. 1995) (concluding that ignoring the plain language of the plan and denying benefits was arbitrary and capricious); see also Swaback v. Am. Info. Tech. Corp., 103 F.3d 535, 540 (7th Cir. 1996) (same). In determining the reasonableness of an interpretation, I interpret plan language as would a person of average intelligence and experience. Id. at 540-41.

In the present case, Zurich states that it denied plaintiff's claim because it concluded that Anthony's death was not the direct result of an accidental injury and that the claim was

5

excluded because death resulted from illness or disease. Zurich read the policy as requiring that death be "a direct result, independent of all other causes," of "accidental bodily injury." (ZUR 184.) Because it determined that Anthony's surgery and the pulmonary embolism that it presumably produced was an intervening cause of death, it concluded that death was not the direct result of an injury independent of other causes. Zurich, based on advice received from outside counsel interpreting Senkier, also concluded that death due to complications from surgery is due to illness rather than accident and therefore Anthony's death was within the exclusion for illness or disease.

     I conclude that Zurich misinterpreted both the language of the policy and Senkier. As a result, the reasoning it relied on to deny plaintiff's claim is so flawed as to make the denial arbitrary and capricious. First, Zurich's conclusion that plaintiff cannot recover under the policy unless Anthony's death was the direct result of an accidental injury independent of other causes is not supported by the policy's language. Under the policy, a beneficiary can recover if the deceased suffers an accidental injury that is the direct result of a specified hazard independent of other causes and the injury results in death. However, death does not necessarily have to be a direct result of the injury. Nor need death be caused solely by the injury. Zurich misread the policy by conflating the provisions relating to injury and death and mistakenly inserting the causation requirement applicable to injury into the provision relating to death. This was unreasonable.

     Further, in determining that Anthony's death was excluded from coverage because death due to complications of surgery is necessarily death due to illness rather than accident, Zurich relied on a misinterpretation of Senkier. Senkier stands for the rule that death due to complications of medical treatment for an illness or disease is death due to

6

illness or disease, not that death due to complications for treatment of an <u>accidental injury</u> is death due to illness or disease. In fact, <u>Senkier</u> suggests that death in the latter situation is accidental. <u>See</u> 948 F.2d at 1052 ("It would be different if he twisted his knee playing tennis and the injury caused blood clots that embolized to his lungs and killed him."). Like the present case, <u>Senkier</u> involved a policy that excluded coverage for death resulting from medical treatment for illness or disease. <u>Id.</u> at 1051. However, in <u>Senkier</u>, death resulted from a medical mishap during the treatment of Crohn's disease, whereas in the present case, death may have resulted from a mishap during treatment for an accidental injury rather than illness or disease. The discussion in <u>Senkier</u> indicates that one cannot separate the complications of a medical treatment itself from the reason necessitating the medical treatment, i.e. Crohn's disease or cancer. Further, Zurich's understanding that death due to complications of any medical treatment is death due to illness or disease would render the policy's exclusion, which applies only to medical treatment of sickness, disease, or bodily infirmity (not medical treatment of an accident), superfluous, and would nullify the limitations on that exclusion. Thus, Zurich's decision that plaintiff's claim was within the policy's illness or disease exclusion was based on a misreading of the law and was therefore arbitrary and capricious.

To the extent that Zurich denied plaintiff's claim based on the conclusion stated in its March 4, 2008 letter that the relevant accident was the original knee injury rather than the break in the wire, and that the break in the wire is not an accident under the policy, the denial fails because Zurich failed to set forth "the specific reasons for such denial, written in a manner calculated to be understood by the participant" as required by 29 U.S.C. § 1133(1) (stating that notice must include

7

> (i) [t]he specific reason or reasons for the adverse determination;
>
> (ii) [r]eference to the specific plan provisions on which the determination is based;
>
> (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary).

See also 29 CFR § 2560.503-1(g)(1). In denying plaintiff's claim on appeal, Zurich had to provide notice including (i) and (ii) above. Id. at § 2560.503-1(j). However, Zurich stated only that

> we reaffirm our conclusion that the accident in this matter was the injury Mr. Sellers suffered to his left knee on September 15, 2005 while performing training exercises at work. The break in the wire inserted in his knee during surgery was not an accident under the Policy. This is the case, since the failure of a medical device surgically implanted into the body is not an accident under the Policy.

Zurich's statement is no more than a bare unsupported conclusion. Zurich does not explain how it reached the conclusion nor does it identify the provisions on which it relied. See Wolfe v. J.C. Penney Co., Inc., 710 F.2d 388, 392 (7th Cir. 1983) (abrogated on other grounds). Zurich concedes that standing alone, its statement is insufficient, (Br. in Opp'n to Mot. for Summ. J. at 8), but argues that in the context of its other reasons, it suffices. However, this argument fails because, as discussed, Zurich's other reasons are based on misinterpretations of policy language and case-law.

Turning to the question of remedy, when an ERISA plan administrator fails to make adequate findings or provide adequate reasoning, a reviewing court generally remands for further findings or explanation, unless it is "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 477 (7th Cir. 1998) (quoting Gallo v. Amoco

Corp., 102 F.3d 918, 923 (7th Cir.1996)); see also Saffle v. Sierra Pac. Power Co., 85 F.3d 455, 460-61 (9th Cir. 1996). In the present case, I cannot unequivocally say that Zurich could not reasonably deny plaintiff's claim on any ground. Thus, I will remand the case to Zurich for a new determination of plaintiff's claim.

I will presently withhold decision on plaintiff's request for attorney fees and prejudgment interest and direct the parties to submit further information on the issue.

**Therefore,**

**IT IS ORDERED** that plaintiff's motion for summary judgment is **GRANTED** to the extent discussed above.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff shall submit a statement of proposed fees and evidence in support thereof by **June 12, 2009**. Defendant shall have 21 days following service of the statement of proposed fees to file any brief in opposition. Plaintiff shall have 14 days following service of defendant's brief in opposition to file a reply brief.

Dated at Milwaukee, Wisconsin this 13 day of May, 2009.

/s
LYNN ADELMAN
District Judge

9