# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**AUDREY Y. SELLERS,**
      **Plaintiff,**

    v.                                  Case No. 08C0224

**ZURICH AMERICAN INSURANCE CO.,**
      **Defendant.**

---

## DECISION AND ORDER

Plaintiff Audrey Sellers brought this action alleging that defendant Zurich American Insurance Co. ("Zurich") violated the Employee Retirement Income Security Act of 1974 ("ERISA") by denying her benefits under an Accidental Death and Dismemberment ("AD&D") policy following the death of her husband, Anthony Sellers ("Anthony"). Defendant denied plaintiff's claim, and after reviewing the case, I remanded it to the plan administrator for further review. See Sellers v. Zurich Am. Ins. Co., 615 F. Supp.2d 816 (E.D. Wis. 2009). On remand, defendant again denied plaintiff's claim. The parties now cross move for summary judgment.

## I. BACKGROUND

Anthony worked for Time Warner Cable as a cable inspector/investigator. On September 15, 2005, he tore the patellar tendon in his left knee while performing training exercises at work. Surgeons repaired his knee and inserted a metal wire. Anthony recovered from his injury, but the wire remained in his knee. On May 15, 2006, Anthony reported pain and swelling in the knee, and an x-ray revealed that the wire had broken into fragments. On November 16, 2006, doctors operated on Anthony, removing the wire.

Several days later, doctors discovered and removed a hematoma. On November 25, 2006, Anthony suffered a pulmonary embolism with infarct and died. Post-mortem review indicated that surgery removing the wire caused the embolism.

Anthony participated in an employee benefit plan, which included the AD&D policy. The policy provided a $101,000 death benefit if the employee's "injury . . . result[ed] in Loss of Life" and death occurred "within 365 days of the accident." (Aff. of Counsel Attaching Admin. R. in Supp. of Pl.'s Mot. for Summ. J. Ex. Part 4 at ZUR 213.) The policy does not define "accident", and it grants defendant "discretionary authority to determine eligibility for benefits and to construe the terms of the plan." (Id. Ex. Part 3 at ZUR 121.)

In a July 21, 2009 letter to plaintiff, defendant stated:

> Here, under the terms of the coverage at issue, no accidental death benefits are payable with respect to this claim. Mr. Sellers was reported to have suffered an injury to his knee on September 15, 2005, had undergone surgical procedures, and died on November 25, 2006, a period longer than 365 days. The May 2006 wire breakage, specific date not reported, is not considered an accidental injury for the purposes of making a determination on this loss, as it was an expected complication of the original surgical procedure repairing the tendon injured during the September 15, 2005 training exercises at work. Therefore, the wire breakage is not a new "accident" and no benefits are payable, as Loss of Life did not occur within 365 days of the original date of the accident, as reported on the claimant's statement and the attending physician's statement. Under our interpretation of the policy, a medical device that fails seven months later – even if inserted into the body as the result of an accident – does not constitute a separate "accidental bodily injury" from the original accident, particularly when such failure is expected.

(Armstrong Aff. Ex. B.)

In further correspondence dated September 8, 2009, defendant expanded on the reasoning for its decision:

> You requested additional information about why Zurich concluded that Mr. Sellers' May 2006 wire breakage is not an accident under the terms of

the accidental death and dismemberment policy. Zurich reached this conclusion because:

(1) the claim forms do not contend it is (ZUR 00067);

(2) the attending physician's statement does not contend it is (ZUR 00068);

(3) Mr. Sellers' doctor suggested removal of the broken wire on May 15, 2006 (ZUR 00024-25) and discussed it again on June 19, 2006 (ZUR 00027), and again on November 6, 2006 (ZUR 00032) before removing the wire on November 16, 2006 (ZUR 00049-50);

(4) the medical records submitted with the claim show that none of Mr. Sellers' treating physicians, or any other doctors, were surprised that the wire inserted during the initial surgery in September 2005 broke.

In fact, Mr. Sellers' treating surgeon, Dr. Rosemary Schultz, stated in her operative report that:

> Anthony is a 42 year old Black male who had injured his left patellar tendon and subsequently had repair. The repair involved an 18-gauge wire to secure the patella to allow for a successful repair. The repair was successful. **In the interim, the wire has broken, which in many degrees, is expected**. Now, it is painful, and in order, as well, to avoid any migration, the patient has taken to the operating room for removal of the hardware. As of his last x-rays in May, there were three separate fragments.

(ZUR 00049) (emphasis added).

Zurich focused the current inquiry on the term "accidental bodily injury" as that term is used in the policy (ZUR 00092). "Expected" internal failure of the hardware in this case (Per Dr. Schultz'[s] operative report) is not an "accident" the way Zurich construes that term in the policy. Accidents are unexpected events of a fortuitous nature. Here, Mr. Sellers' surgeon states that wire breakage is expected, and no other medical evidence contradicts that conclusion.

Following Zurich's consideration of the evidence submitted and, using its discretion to construe the terms of the policy, it concluded that the only accident in this case was the original knee injury on September 15, 2005.

3

> You asked Zurich to identify who expected the break in the wire, and whether that individual expected the wire to break in five pieces. The medical evidence in this case establishes that Mr. Sellers' treating physician, Dr. Rosemary Schultz, stated that wire breakage "is expected" in her operative report dated November 16, 2006. She does not indicate her expectation that the wire would break "in five pieces," but Zurich does not believe the number of pieces is relevant or material to the inquiry of whether the wire breakage was expected or was an accident under the policy. Dr. Schultz met with Mr. Sellers on multiple occasions to discuss removal of the broken wire. While the records do not indicate whether she told Mr. Sellers that wire breakage "is expected" it is reasonable to conclude she informed Mr. Sellers of this fact. Either way, however, the objective facts in the administrative record conclusively establish that the wire breakage was expected.
>
> With respect to your second question concerning when Dr. Schultz formed her expectation, Zurich refers you to Dr. Schultz's operative report dated November 16, 2006. Her expectation is stated as of the date of the report, but her records indicate she was aware of the breakage as early as May 15, 2006, (ZUR 00024-00025), and she did not express surprise at that time or any other. Zurich concluded from this that Dr. Schultz knew from the time she installed the wire that breakage "in many degrees, is expected."
>
> Because there is no contradictory medical evidence in the record indicating any suggestion that the wire breakage was *un*expected, Zurich cannot conclude the wire breakage was itself an accident under the terms of the policy. Instead, the accident in this case was the original tendon tear on September 15, 2005.

(Id. Ex. C.)

Plaintiff appealed, and in a November 13 letter, defendant reiterated that the breakage was not an accident because it was expected. Defendant cited a medical report stating, "[a]t 6 weeks, barring any problems, the repair will be at 80% of tensile strength and the wire can and should be removed. If retained, it will ultimately break." (Id. Ex. D.) Zurich found that plaintiff's "not being able to specify the date of the occurrence is inconsistent with a person's general understanding of the term 'accident.'" (Id.)

## II. STANDARDS OF REVIEW

## A. Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I will consider defendant's summary judgment motion first because it is dispositive. In assessing the motion, I take the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## B. ERISA Standard

In an ERISA case, I review a plan administrator's denial of benefits de novo unless the plan gives the administrator discretion to determine eligibility, in which case I review the decision under the arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In the present case, the plan gives defendant discretion. Therefore I will apply the arbitrary and capricious standard. Under such standard, I determine whether the denial "is based on a reasonable explanation of relevant plan documents." Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001) (internal quotations omitted). I may not reverse the decision merely because it is wrong, but only if it is unreasonable. Van Boxel v. Journal Co. Employees' Pension Tr., 836 F.2d 1048, 1052 (7th Cir.1987). The decision stands if defendant provides a rational connection between the text under consideration, the evidence in the case and the conclusion reached. Exbom v. Central States, S.E. & S.W. Health & Welfare Fund, 900 F.2d 1138, 1143 (7th Cir. 1990).

### III. DISCUSSION

Zurich's policy required it to pay a death benefit if the employee's "injury . . . result[ed]" in death, and "death occurred within 365 days of the accident." (Aff. of Counsel Attaching Admin. R. in Supp. of Pl.'s Mot. for Summ. J. Ex. Part 4 at ZUR 213.) Defendant determined that the only accident that occurred was the September 15, 2005 tendon tear in Anthony's knee, and because death did not occur within 365 days of such accident, plaintiff was not entitled to a death benefit. Defendant construed the word, "accident," to mean an unexpected event of a fortuitous nature. It further determined that the breakage in the wire in Anthony's knee was not an accident because it was not unexpected or fortuitous. Plaintiff argues that the breakage in the wire constituted a second accident and that because death occurred soon after, she is entitled to a death benefit. The question before me is whether defendant's decision denying plaintiff a benefit was reasonable.

I conclude that it was. The record contains considerable evidence that the breakage in the wire was not an accident. Plaintiff's doctor expected the wire to break, and medical literature indicates that an implanted wire will eventually break. The evidence indicates that plaintiff's doctor suggested to Anthony on several occasions that he have the wire surgically removed, and eventually he did. Because plaintiff's doctor expected the wire to break and because medical literature indicated that the wire would break, the fact that the wire did break was neither unexpected nor fortuitous. Therefore, defendant's determination that the breakage was not an accident and its decision to deny plaintiff a benefit was not unreasonable. Defendant provides a rational connection between the language of the plan, the evidence in the case and the conclusion it reached.

6

Plaintiff first suggests that because of federal common law, in reviewing defendant's decision to deny a death benefit, I should apply a less-deferential standard than reasonableness. I disagree. The plan confers discretion on defendant, and because it does, I may overturn defendant's decision to deny benefits only if it is unreasonable. And, as discussed, it is not unreasonable to conclude that an expected consequence of surgery is not an accident.

Secondly, plaintiff argues that Anthony did not expect the wire to break and that therefore the breakage should be considered an accident. I again disagree. First, the record is unclear as to what Anthony expected, but I find it more likely than not that his doctor told him that the wire would break. Secondly, Anthony's subjective expectations are not dispositive of whether defendant's decision that the breakage of the wire was not an accident was reasonable.

Third, plaintiff argues that in determining whether the breakage in the wire was an accident, defendant should have applied the so-called "accidental result" test. However, when engaging in arbitrary and capricious review, I need not determine which test is best (as the Seventh Circuit indicated in Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1053 (7th Cir. 1991), it is possible that all "the tests are no good"), but whether the decision at issue is reasonable. And, as discussed, I conclude that it was.

## IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**, and this case is **DISMISSED**.

7

Dated at Milwaukee, Wisconsin this 18 day of February, 2010.

/s_____
LYNN ADELMAN
District Judge

8

Case 2:08-cv-00224-LA   Filed 02/19/10   Page 8 of 8   Document 58